

# THE ATTORNEY GENERAL
## OF TEXAS

July 15, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Barry L. Macha
Criminal District Attorney
Wichita County Courthouse
Wichita Falls, Texas    76301

Opinion No. JM-748

Re: Liability of a county for acts committed by members of a volunteer fire department

Dear Mr. Macha:

You ask several questions touching on the liability of a county for the acts of others furnishing fire fighting and fire protection services in the county. Your request encompasses the following issues:

> 1. Who can be considered to be 'an agent of the county' when furnishing fire services in the county?

> 2. When is a county liable for the acts of volunteer fire fighting departments furnishing fire service in the county?

> 3. What is the extent of a county's liability for the intentional acts of its agents furnishing fire service in the county?

Counties are permitted to undertake only those activities expressly permitted by the constitution or by statute, or which necessarily can be supported by an implied grant of authority. Tex. Const. art. V, §18; Canales v. Laughlin, 214 S.W.2d 451, 453 (Tex. 1948); Anderson v. Wood, 152 S.W.2d 1084, 1085 (Tex. 1941); Attorney General Opinion Nos. JM-697 (1987); JM-350 (1985).

Counties specifically are authorized by statute to provide fire services directly. V.T.C.S. art. 2351a-1. This statute also permits counties to contract with cities, towns, and villages in the county or in adjoining counties, for the use of fire trucks and other fire fighting equipment to furnish fire service in areas of the county outside the limits of any municipality. Id. By implication, this specific grant of authority to contract for equipment also includes the power to contract for the personnel necessary to operate the

equipment. Attorney General Opinion Nos. V-1275 (1951); O-4326 (1942).

Counties are also permitted to contract with incorporated volunteer fire departments located within the county to furnish fire service for areas not within the corporate limits of a city or town. Article 2351a-5, V.T.C.S. The terms of such contracts are determined by negotiation between the volunteer fire department and the county, and the volunteer fire fighters may be paid from the general fund of the county. Id.

If a county contracts with a city, town, or village for the provision of fire service, then article 2351a-1 provides that the acts of the employees of the city, town, or village furnishing fire service pursuant to such a contract "shall be considered the acts of the count[y] in all respects." In a previous opinion, we stated that article 2351a-1 fixes the potential for the liability of the parties to a contract between a county and a city permitted by the statute. Attorney General Opinion H-279 (1974).[1] There, we held that a county would be liable for the acts of a city employee committed while the city was fulfilling a contractual obligation to the county to fight fires.

Article 2351a-5, on the other hand, does not create an explicit principal-and-agent relationship between the county contracting for fire service and the volunteer fire department furnishing the service. Although a casual reading of article 2351a-5 may create the impression

---

1. We note that in Attorney General Opinion H-279 we compared article 2351a-1 with section 4(g) of the Interlocal Cooperation Act, article 4413(32c), V.T.C.S., which provides:

> (g) When governmental units enter a contract or agreement for the furnishing of fire protection services, any civil liability related to the furnishing of those services is the responsibility of the governmental unit which would be responsible for furnishing the services absent the contract or agreement.

As this office said in Attorney General Opinion H-279, the two statutes must be construed together. Article 2351a-1 is the more specific statute and must prevail over the general provisions of the Interlocal Cooperation Act. City of Baytown v. Angel, 469 S.W.2d 923 (Tex. Civ. App. - Houston [14th Dist.] 1971, writ ref'd n.r.e.); Commercial Standard Fire and Marine Co. v. Commissioner of Insurance, 429 S.W.2d 930 (Tex. Civ. App. - Austin 1968, no writ); 53 Tex. Jur. 2d, Statutes §161 (1964).

that such a volunteer fire department contracting with a county always will be an independent contractor, and thus bear the sole responsibility for its acts, we are unable to say that such necessarily will always be the case.[2]

Instead, we believe that the question of assigning liability when fire services are provided by an incorporated volunteer fire department pursuant to a contract with a county will always be one of fact. Whether liability will be fixed on the volunteer fire department alone as an independent contractor or placed on the county as a principal responsible for the acts of its agent volunteer fire department will depend on an application of the principles of the law of agency to the facts.[3] As a general rule, of course, the precise legal impact of a relationship arising out of a contract will be construed according to the realities of a situation, and not simply by reference to the formal recitals used in the contract (i.e., "X volunteer fire department is an independent contractor.") We do not decide questions of fact, nor are we suited to advise parties to potential contracts negotiated pursuant to article 2351a-5 how to structure their bargains to reach a desired result in the law.

You express concern that certain language in the provisions of article 2351a-1 may create unlimited liability on the part of the county for the acts of <u>anyone</u> who provides <u>any</u> fire service, whether pursuant to a contract authorized by statute, as an officious intermeddler or as a volunteer. Your concern is engendered by the somewhat awkward drafting of article 2351a-1. Specifically, the exact

---

2. We do not consider those cases where a contracting volunteer fire department is truly an independent contractor with sole liability for its acts, but where an injured party seeks to hold the contracting county liable on the theory that it is responsible for the <u>negligent</u> selection of an independent contractor who causes an injury. <u>See generally</u> Note, <u>Torts of an Independent Contractor</u>, Yale L. J. <u>861</u> (1916). Nor do we address the applicability of a rule of agency which provides that contracting parties are responsible for acts of independent contractors when the work to be performed pursuant to contract can be classified as inherently dangerous. Restatement (Second), of Agency §416.

3. We note that volunteer fire fighters and fire departments are not liable for "damage to property resulting from . . . reasonable and necessary action in fighting or extinguishing a fire on the property." Civ. Prac. and Rem. Code §78.001.

meaning of the fourth sentence of the article, as emphasized below, is problematical:

> The Commissioners Court of any county of this State shall also have the authority to enter into contracts with any city, town or village within the county and/or adjoining counties, upon such terms and conditions as shall be agreed upon between the Commissioners Court and the governing body of such city, town or village, for the use of the fire trucks and other fire-fighting equipment of the city, town or village. <u>It is specifically provided that the acts of any person or persons while fighting fires, traveling to or from fires, or in any manner furnishing fire protection to the citizens of a county outside the city limits of any city, town or village, shall be considered as the acts of agents of the county in all respects, notwithstanding such person or persons may be regular employees or firemen of a city, town or village</u>. No city, town or village within a county and/or adjoining counties shall be held liable for the acts of any of its employees while engaged in fighting fires outside the city limits pursuant to any contract theretofore entered into between the Commissioners Court of the county and the governing body of the city, town or village. (Emphasis added).

V.T.C.S. art. 2351a-1, §1.

At first blush, the fourth sentence of article 2351a-1 seems to depart from the tenor of the rest of the provision: the questioned language appears to create a liability on the part of the county to the whole world for <u>any</u> act in <u>any way</u> connected with furnishing fire service, including acts done while traveling to and from fires.

Reference to the canons of statutory construction provides several rules which help to resolve the problem posed by the somewhat confusing sentence. First, legislation is to be interpreted so as to fairly meet the intent of the legislature, <u>Calvert v. Kadane</u>, 427 S.W.2d 605 (Tex. 1968), and statutes must be given a fair, rational, and sensible construction. <u>Empire Gas and Fuel Co. v. State</u>, 47 S.W.2d 265 (Tex. 1932). The precise intent of the legislature in drafting article 2351a-1 is not difficult to divine: to permit counties to furnish fire service directly or pursuant to a contract with certain city, town, or village. We note that the caption to article 2351a-1 as originally enacted read:

> An Act authorizing the Commissioners Court in all counties of this State to provide fire protection and fire fighting equipment for the citizens of the county outside of any city, town, or village therein, either by the purchase and maintenance by the county of the necessary equipment, or by entering into contracts with the governing body of cities, towns, or villages located within the county and/or adjoining counties for the use of the fire fighting equipment of the city, town, or village; <u>providing that the operation of any fire fighting equipment outside the city limits of any city, town, or village, pursuant to contracts with the Commissioners Court of the county, shall be considered as operations of the county, and all persons engaged in such operations, notwithstanding they may be employees of a city, town, or village, shall be considered as agents for the county in all respects; providing purchase of fire fighting equipment must be authorized by election; and declaring an emergency.</u> (Emphasis added).

Acts 1941, 47th Leg., ch. 360, at 567. The caption of a legislative act may be considered as a guide to the purpose of the legislation. <u>Anderson v. Penix</u>, 161 S.W.2d 455, 459 (Tex. 1942). The caption to article 2351a-1 as originally enacted gives a clear view of the ultimate meaning of the section. It convincingly demonstrates that the legislature intended for the fourth sentence to relate to the parties to a contract executed pursuant to the statute.

Second, if the legislature intended to subject a county to the very real possibility of unlimited liability for the acts of anyone providing fire service, then surely the statute would do so plainly and forcefully. To say that the language of the fourth sentence of article 2351a-1 imposes such liability would be to abolish the county's defense of sovereign immunity in a large number of instances and in a strikingly casual fashion. Legislation in derogation of the doctrine of sovereign immunity should be strictly construed, and legislative intent to waive the doctrine should be clear, and applied only to cases clearly within the legislature's intent. <u>Cf.</u> <u>Dobbins v. Texas Turnpike Authority</u>, 496 S.W.2d 744, 748 (Tex. Civ. App. - Texarkana 1973, writ ref'd n.r.e.).

Finally, to say that the troublesome language in the provision here imposes almost unlimited liability -- in derogation of common law rules such as those relating to sovereign immunity -- would be to ascribe to the legislation an unreasonable, unjust, and absurd purpose, something contrary to the acceptable rules for divining

legislative intent.  State Highway Department v. Gorham, 162 S.W.2d 934, 936 (Tex. 1942).

Thus, we believe that the seemingly unlimited phrase "the acts of any person" in the fourth sentence of article 235a-1 can only be understood to refer to acts done pursuant to the kind of contracts authorized between a county and named entities in the first part of the provision.  Our conclusion is buttressed by additional language found elsewhere in the same sentence for the final clause of the fourth sentence reads "notwithstanding such persons [the "any persons" referenced in the first part of the sentence] may be regular employees or firemen of a city, town, or village."  Our interpretation of the sentence is all the more forcefully supported by the language of the last sentence in article 2351a-1, which clearly appears to have been written to remove even the slightest possibility for the implication of liability to cities, towns, and villages furnishing fire services to a county pursuant to a statutorily authorized contract.  Article 2351a-1 must be construed as a whole, and all of the language employed is to be viewed together.  Attorney General Opinion Nos. JM-670 (1987); M-650 (1970); 53 Tex. Jur.2d Statutes §160 (1964).  When taken together, the consecutive sentences of article 2351a-1 limit and make most certain the key ramification of the explicit agency relationship created by the statute:  counties potentially are liable for the acts of city, town, or village furnishing fire service pursuant to contract under the statute.  A county is not liable for the acts of anyone else, including volunteers who furnish fire protection service.

You also ask whether a county may be held liable for the intentional acts of others permitted by statute to furnish fire service to the county.[4]  A county's liability for the acts of its agents must be established by reference to the common law and to statute.  The doctrine of sovereign immunity bars suits against counties for the

---

4.  Our consideration of this issue is limited to intentional tortious behavior governed by state common law or statutory law.  We express no view on the possible application of certain federal civil rights laws to intentional conduct by government employees or agents.  See Frels and Horner, The Interrelationship of Tort Liability, Governmental Immunity, and the Civil Rights Statutes, 16 St. Mary's L.J. 851 (1985).  We also disclaim any intent to address the issue of whether a county may be held liable for the negligent selection of an agent or contractor who commits intentional torts.  See note 2, supra.

acts of its agents except in the circumstances specified in the Texas Tort Claims Act [TTCA]. Civ. Prac. & Rem. Code §101 et seq.; see, e.g., Davis v. Lubbock County, 486 S.W.2d 109 (Tex. Civ. App. - Amarillo 1972, no writ); Townsend v. Memorial Medical Center, 529 S.W.2d 264 (Tex. Civ. App. - Corpus Christi 1975, writ ref'd n.r.e.). Consequently, acts done within the confines of a relationship between a county and its duly authorized agent will be immune from suit, save for the limited waivers of sovereign immunity found in the TTCA. Civ. Prac. & Rem. Code §§101.001(1); 101.021.

The Tort Claims Act specifically preserves sovereign immunity for claims arising:

> (2) from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action; or
>
> (3) from the failure to provide, or the method of providing police or fire protection. (Emphasis added).

Civ. Prac. & Rem. Code §101.055 (2), (3).

The predecessor provision to these provisions, V.T.C.S. art. 6252-19, re-enacted without substantive change in the Civil Practice and Remedies Code, has been the subject of substantial judicial exposition, and we submit that those cases can be studied with profit for guidance concerning preventative planning by county officials charged with the provision and supervision of emergency services. See V.T.C.S. art. 6259-19, §14(5), (8), (9). We only note that the particular provisions quoted in some circumstances comparing fire service can be navigated only with great care by a governmental unit seeking to retain the protection offered by sovereign immunity. See, e.g., Black v. Nueces County Rural Fire Prevention District No. 2, 695 S.W.2d 562 (Tex. 1985) (immunity for action taken to provide emergency service, only if the action is in compliance with any laws and ordinances applicable to emergency service; if there are no ordinances governing the provision of emergency service then there can be no reliance in the immunity granted by this section); State v. Terrell, 588 S.W.2d 784, 788 (Tex. 1979) (method of providing emergency service refers to the general division or plan about how service is to be provided; and not to case-by-case actions undertaken pursuant to a plan, if any).

Moreover, as you correctly note, the Tort Claims Act preserves sovereign immunity in cases "arising out of assault, battery, false imprisonment, or any other intentional tort. . . ." Civ. Prac. & Rem.

Code §101.057(2).  Sovereign immunity clearly is an absolute bar to liability in the case of all common law intentional torts.  Once a claim is characterized as belonging to the class of common law intentional torts, suit on that claim is barred by the sovereign immunity.  Townsend v. Memorial Medical Center, 529 S.W.2d 264, 266 (Tex. Civ. App. - Corpus Christi 1975, writ ref'd n.r.e.).

### S U M M A R Y

Counties are liable for the negligent acts of agents furnishing fire services pursuant to a contract authorized by articles 2351a-1 or 2351a-5, V.T.C.S., to the extent specified in the Texas Tort Claims Act. Incorporated volunteer fire departments furnishing such services pursuant to contract may be agents of the county in some circumstances.  Counties are not liable for the intentional common law torts of agents furnishing fire protection service.

Very truly yours

JIM  MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Don Bustion
Assistant Attorney General